IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARWIN PALMER,)
)
    Plaintiff,)    Civil Action No. 10-42
)    Judge Nora Barry Fischer
v.)    Magistrate Judge Bissoon
)
RAMON RUSTIN, *et al.*,)
)
    Defendants.)

## MEMORANDUM OPINION

For the reasons stated below, the motion to dismiss (Docket No. 34) filed by Defendants Rustin, Leone, McCall, Hungerman, Cestra, Butler, Kavals, Dutrieville,[1] and Helt ("Defendants") is granted with prejudice, in part and without prejudice, in part.

Darwin Palmer ("Plaintiff") brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging deprivations of his rights under First, Eighth, and Fourteenth Amendments to the Constitution of the United States, committed by multiple Defendants during his incarceration at the Allegheny County Jail ("ACJ") in Pittsburgh, Pennsylvania, for a parole violation. Compl. (Docket No. 3 at 2). Plaintiff's last known address was at Renewal, Inc., in Pittsburgh.[2] This suit commenced with this Court's receipt of Plaintiff's complaint, without filing fee, on January 12, 2010. (Docket No. 1). Leave to proceed *in forma pauperis* ("IFP") was granted on January 13, 2010. (Docket No. 5).

---

[1] The name of this Defendant is spelled "Dutrieville" and "Dutriville" in the various filings in this case. This Court adopts the use of "Dutrieville," in this Memorandum, as it is the spelling used by Plaintiff in the body of the complaint.

[2] This Court is unsure of Plaintiff's current address. Attempts to locate him through the Pennsylvania Department of Corrections and Renewal, Inc., have been fruitless. The undersigned notes that Plaintiff was explicitly ordered to inform the Court of any changes to his address. See Order of April 12, 2010 (Docket No. 12 at 3).

1

Defendants filed a motion to dismiss on September 7, 2010. (Docket No. 34). As of the date of this writing, Plaintiff has not responded to this motion. Hence, the motion is ripe for disposition.

A. **Plaintiff's Factual Allegations**

The following is a recitation of Plaintiff's factual allegations relevant to disposing of the instant motion. Plaintiff alleges that, on February 28, 2008, he was transferred into pod 4B at ACJ. (Docket No. 3 at 5). Rules for the pod were posted on the walls of the pod. Id. These rules allegedly did not appear in the ACJ handbook. Id. Defendant Helt allegedly told Plaintiff that a violation of the posted rules would result in Plaintiff being confined in the restricted housing unit ("RHU"), and that Plaintiff then would be "up shits [sic] creek." (Docket No. 3 at 5 – 6). Defendant Helt allegedly also refused to give Plaintiff a pillow, mattress, or hygiene products as he requested. Id. at 3 – 4. Defendant Helt further allegedly refused to turn off the light in Plaintiff's cell, and threatened Plaintiff that, if he did not take a mandatory shower every Monday, Wednesday, and Friday, he would be locked in his cell for a period of 48 to 72 hours. Id. at 5 – 6. Finally, Plaintiff alleges that Defendant Helt answered "no" when Plaintiff asked whether he would be allowed to attend Muslim religious services on February 29, 2008, and allegedly further responded that "if he had it his way he would kill everyone in the middle east [sic]." Id. at 7 – 8. Plaintiff was transferred to a different pod on March 15, 2008. Id. at 8.

On April 3, 2008, Defendants Ducker and Leone allegedly would not allow Plaintiff to attend Muslim religious services "because [Plaintiff's] I.D. arm band was held together with a rubber band." Id. at 8 – 9. Defendant Leone allegedly refused to allow Plaintiff to attend

2

services again on April 11, 2008, because Plaintiff's name did not appear on a list of Muslim inmates.[3] Id. at 9.

On April 14, 2008, Defendant Dutrieville allegedly left a note in the housing block log book indicating that Plaintiff and his cellmate were to be locked in their assigned cell during the following two days. Id. at 11. While Plaintiff does not explicitly state Defendant Dutrieville's reason for doing this in the text of the complaint, a letter grieving this incident, which was submitted to this Court as an attachment to the complaint, indicates that it was because "[Plaintiff] did not lock into [his] cell quickly enough to [*sic*] [Defendant Dutrieville's] liking." (Docket No. 3-1 at 7). Plaintiff alleges that, on April 15 and 16, 2008, Defendants Kavals and Butler would not allow Plaintiff to exit his cell for recreation or showers. (Docket No. 3 at 11). Plaintiff states that he never received a misconduct report, any sort of written notice, or a hearing in relation to this incident. Id. at 12.

Finally, Plaintiff makes general allegations with respect to Defendants Rustin,[4] McCall, and Hungerman based on their supervisory capacities or involvement in the administrative grievance process. Id. at 4, 9, 15 – 16. Plaintiff also alleges that he grieved the above incidents through the jail's grievance system, but received no responses. Id. at 9, 12, 17.

B. **Applicable Standard of Review**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true,

---

[3] Plaintiff indicates in the exhibit that he filed in support of his complaint that, while he was incarcerated at ACJ, he used the name "Darrin Smith #2256." (Docket No. 3-1 at 8).

[4] Defendant Rustin is no longer the Warden of the ACJ. See Ramon Rustin Takes Over at MDC, koat.com, http://www.koat.com/r/26522419/detail.html (last visited June 20, 2011).

3

no relief could be granted under any "reasonable reading of the complaint." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Under this standard, a court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. See Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). However, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). Nor must a court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Additionally, a Court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This is not to say that "heightened fact pleading of specifics . . ." is required. Id. at 570. However, "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The Supreme Court has made it clear that the requirement that pleadings be facially plausible, as expressed in Twombly, applies to all civil suits in the federal courts. See Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009).

When ruling on a 12(b)(6) motion, a court may take into consideration information in addition to the complaint, such as "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Factual allegations within documents described

4

or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff makes such a request – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

C.  **Analysis**

In order for a claim to be cognizable under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (*overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330 – 331 (1986)).

1. **Due Process Claims**

Plaintiff alleges that he was placed on disciplinary cell restriction for 48 hours by Defendant Dutrieville, and that this was enforced by Defendants Kavals and Butler. This appears to be an attempt to state a claim under the Due Process Clause of the Fourteenth Amendment. Defendants interpret this as a substantive due process claim, and argue that it should be dismissed under the explicit source rule. (Docket No. 35 at 8 – 9).

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels, 474 U.S. at 331). Official conduct violates substantive due process if it "shocks the conscience . . . ." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." Id. (internal citations and quotes omitted).

Prior to engaging in a substantive due process analysis of Plaintiff's claims, it is first necessary to determine whether they are properly brought as substantive due process claims. The Supreme Court has noted that it has "'always been reluctant to expand the concept of

6

substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the explicit source rule. Lewis, 523 U.S. at 843 – 44. Under this rule "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 – 60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

Here, it is clear that the acts of which Plaintiff complains arise under the concept of procedural due process. Thus, to the extent that Plaintiff bases his claims on substantive due process, they will be dismissed. However, this argument fails to address the issue of whether Plaintiff has failed to state a claim for a violation of his procedural due process rights. While Defendants have failed to brief this issue, this Court holds that, for the reasons stated below, Plaintiff has not done so.[5]

In order to state a claim for a violation of procedural due process, a plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once a court

---

[5] It is proper for this Court to address this issue *sua sponte*. 28 U.S.C.§ 1915 (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, any claim that lacks arguable merit in fact or law. Stackhouse v. Crocker, 266 Fed.Appx. 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); see also Banks v. Mozingo, No. 08-004, 2009 WL 497572, at *6 (W.D.Pa. Feb. 26, 2009) (Cercone, J.).

determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

As the Supreme Court of the United States has recognized on multiple occasions, "prisoners do not shed all constitutional rights at the prison gate[.]" Sandin v. Conner, 515 U.S. 472, 485 (1995) (citing Wolff v. McDonnell, 418 U.S. 539, 555 (1984)). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (internal quotations and citations omitted). One of these limitations, in the context of state prison regulations, is that a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations and quotations omitted).

Under this standard, to the extent that Plaintiff claims a violation of due process with respect to his two-day cell restriction – which was instituted, allegedly, without any sort of notice or hearing – such claims must fail as a matter of law. Plaintiff fails to allege any facts that, if proven true, would support the conclusion that he suffered any sort of atypical or significant hardship with respect to his brief disciplinary confinement. Plaintiff admits that he was released from cell restriction after 48 hours, and that he was not placed in solitary confinement. Given that it has been held that administrative confinement for as long as fifteen months is insufficient to implicate a liberty interest, see Griffin v. Vaughn, 112 F.3d 703, 706-07 (3d Cir. 1997), it is clear that Plaintiff's cell restriction for such a short period of time, and under the conditions that he alleges, would not do so either. See Armstrong v. Brooks, 283 F.App'x 906, 909-10 (3d Cir.

8

2008) (holding that a 30-day period of cell restriction was insufficient to trigger constitutional protections under Sandin). Accordingly, Plaintiff's claims with respect to his cell restriction will be dismissed. As it is clear that Plaintiff cannot, as a matter of law, prevail on these claims, dismissal will be with prejudice.

**2. Eighth Amendment**

Plaintiff appears to be attempting to raise Eighth Amendment conditions of confinement claims with respect to the alleged acts or omissions of Defendant Helt.

The Eighth Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id, at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions –

considered alone constitutionally insufficient – may present an Eighth Amendment violation, such conditions nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Id. The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Id. at 838. This reasoning is grounded in the axiom that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)).

Additionally, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 at 845. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

Plaintiff's allegations with respect to Defendant Helt fail to satisfy the objective prong of the above test. Denial of a mattress, pillow, and hygiene materials for a few days is insufficient to implicate a conditions of confinement that are repugnant to contemporary standards of decency.[6] See, e.g., Shaeffer v. Schamp, No. 06-1656, 2008 WL 2553474, at *6 (W.D.Pa. June 25, 2008) (Schwab, J.) (holding that a Plaintiff's confinement in a hard cell "for ten days without a mattress, soap, toilet paper, running water, [or] legal supplies," did not constitute cruel and unusual punishment). Accordingly, these conditions of confinement claims will be dismissed, with prejudice.

Defendant Helt's alleged refusal to turn off the light in Plaintiff's cell requires a more in depth analysis. The state courts of Pennsylvania have found that long term housing in cells that, *inter alia*, exposed inmates to constant illumination, does not violate the Eighth Amendment. See Rivera v. Pennsylvania Dept. of Corr., 837 A.2d 525, 530-32 (Pa. Super. 2003). However, in Bacon v. Miner, the United States Court of Appeals for the Third Circuit concluded that

---

[6] Indeed, Plaintiff's own allegations indicate that he was required by Defendant Helt to shower at least three times a week – leading to the conclusion that he was not deprived of all access to hygiene products.

11

exposure to constant illumination, under certain circumstances, may give rise to an Eighth Amendment claim. 229 F.App'x 96, 100 (3d Cir. 2007). Central to the analysis in that case were whether an inmate's exposure to light was constant, and whether, as a result, the inmate had suffered from "any significant medical condition as a result of the pattern of lighting in his cell." Id. In the case at bar, the undersigned notes that Plaintiff does not allege that he has suffered from any sort of medical condition as a result of his alleged exposure to the lighting at the ACJ. Moreover, Plaintiff does not provide any factual allegations concerning how bright his cell's light was, and indicates only two dates – February 28 and 29, 2008 – on which he asked Defendant Helt to turn off the light. (Docket No. 3 at 6 – 7). Finally, Plaintiff was housed in pod 4B for only a short period of time – from February 28, 2008 to March 15, 2008 – and he does not allege that he was exposed to 24-hour illumination after his transfer. Consequently, this Court concludes that Plaintiff has not pleaded a plausible violation of the Eighth Amendment against Defendant Helt with respect to this issue, and his claim will be dismissed. However, as it is not clear that leave to amend would be futile, dismissal will be without prejudice.

Plaintiff also alleges that Defendant Helt made multiple threats to send him to the RHU if he violated the jail's rules, and indicated that he wanted to "kill everyone in the middle east [*sic*]." There is a long established rule that mere verbal threats do not give rise to constitutional violations, and are thus not actionable under section 1983. See e.g., Bartelli v. Lewis, No. 04-0908, 2005 WL 2406048, at *2 (M.D.Pa. Sept. 29, 2005). Indeed, the allegation of verbal threats has been found to be insufficient to state a claim under section 1983 under a variety of circumstances. See, e.g., Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991) ("threats causing fear for plaintiff's life [is] not an infringement of a constitutional right, [and] thus not actionable under § 1983") (*abrogated on other grounds by* Lewis, 523 U.S. 833); Collins v. Cundy, 603

12

F.2d 825, 827 (10th Cir.1979) (allegation that sheriff laughed at and threatened to hang a prisoner did not state a constitutional claim under § 1983); Shabazz v. Cole, 69 F.Supp.2d 177, 201 (D.Mass. 1999) ("the weight of authority is that verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights. 'Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983'"); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987) ("alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation").  To the extent that Plaintiff bases his claims against Defendant Helt on his alleged threats, Defendants' motion will be granted with prejudice.

### 3. Free Exercise of Religion

The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  "[A]ll prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (*overruled in part on other grounds*, City of Boerne v. Flores, 521 U.S. 507 (1997)) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); see also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by showing that it does not pass the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S.at 349. This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18; Turner, 482 U.S. at 89 – 91. These standards indicate that "when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest." Ramzidden v. Monmouth Cnty Sherriff Dept., No. 09-4829, 2010 WL 1752540, at *11 (D.N.J. Apr. 30, 2010). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, Thornburgh, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. Williams v. Morton, 343 F.3d 212, 217 (2003) (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

Defendants argue, somewhat obliquely, that their refusal to allow Plaintiff to attend religious services was based on their legitimate interest in maintaining institutional security. (Docket No. 35 at 6). Specifically, Defendants imply (but do not explicitly state) that the fact that Plaintiff's identification bracelet was held together by a rubber band presented the risk that it actually belonged to another inmate, making it difficult to verify Plaintiff's identity. Id. Defendants put great importance on the fact that the name used by Plaintiff during his incarceration at ACJ – Darren Smith – is not the name under which he filed this suit. Id.

Prisons have a valid penological interest in controlling the movement of their inmates, and in ensuring that the identities of inmates moving throughout an institution can be easily and reliably verified. See Hall v. Ekpe, 408 F.App'x 385, 388 (2d Cir. 2010). Without the ability to do so, the safety and security of the institution is placed at risk.

Additionally, while Defendants do not address the issue of Defendant Leone's alleged refusal to allow Plaintiff to attend religious services on April 11, 2008, the interest in maintaining institutional security by limiting inmate movement logically extends to it as well. Plaintiff includes in his factual allegations that Defendant Leone based this denial on the fact that he did not appear on a list of Muslim inmates, and does not include in his complaint any allegations that would call into question the legitimacy of that basis. (Docket No. 3 at 9 – 10).

Plaintiff indicates in his factual allegations that the two times that he was denied permission to attend religious services, it was because (1) his identification armband was broken; or (2) his name did not appear on a list of inmates authorized to attend these services. Id. at 8 – 10. As a consequence, he has failed to state a plausible claim for relief under the Free Exercise Clause. Accordingly, his claims against Defendants Leone and Ducker will be dismissed.

However, as it is unclear that leave to amend would be futile, dismissal will be without prejudice.

With respect to Plaintiff's allegations that Defendant Helt answered in the negative when he was asked whether Plaintiff would be allowed to attend Muslim religious services on February 29, 2008, Plaintiff has failed to allege facts that, if true, would be sufficient to show a violation of the Free Exercise Clause. Plaintiff fails to allege any facts surrounding the circumstances of Defendant Helt's negative answer, and there is no indication in the complaint whether Plaintiff was ultimately prohibited from attending services that day. This is insufficient to nudge Plaintiff's claims over the line of the conceivable to the plausible. See Twombly, 550 U.S. at 570. Plaintiff's free exercise claim against Defendant Helt will be dismissed. However, as it is not clear that leave to amend would be futile, dismissal will be without prejudice.

### 4. Personal Involvement

It is well established that no liability exists under section 1983 solely based on a theory of vicarious liability or *respondeat superior*. Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990). Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'" Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In situations where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may attach. See Colburn v. Upper

Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). At a minimum, liability in such a case is appropriate "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).

The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. See e.g. Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D.Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff's claims against Defendants Rustin and Hungerman appear to be based solely on their supervisory positions. Accordingly, they will be dismissed with prejudice. Additionally, Defendant McCall appears to be named solely due to his alleged position as grievance coordinator at ACJ. As involvement in the grievance process is not sufficient to assert personal liability under section 1983, he shall be dismissed as well. Leave to amend clearly would be futile – thus, dismissal will be with prejudice.

Plaintiff makes no factual allegations against Defendant Cestra. Indeed, this Defendant's name appears only in Plaintiff's prayer for damages. (Docket No. 3 at 20). As there is no

17

indication that Defendant Cestra had any involvement whatsoever in any of the alleged constitutional deprivations suffered by Plaintiff, he will be dismissed. However, as it is not clear that it would be futile to do so, leave to amend with respect to this Defendant will be granted.

An appropriate order follows.

June 21, 2011                                         BY THE COURT:
                                                      s/Nora Barry Fischer
                                                      NORA BARRY FISCHER
                                                      UNITED STATES DISTRICT JUDGE

cc:
**DARWIN PALMER**
Renewal Resident Mail
P.O. Box 295
Pittsburgh, PA 15230